Douglass, J.
This action is brought to engraft a trust upon certain land, or an investment in land,claimed to belong to the estate of one George Lescaleet, which it is claimed was wrongfully invested by Richard Lescaleet, the title being taken in his own name.
For the purpose of the errors assigned here, the matter of $700, is eliminated from our inquiry; also respecting the matter of the Buckingham lien, etc.; and the matter resolves itself to the question respecting the thousand dollars which grew out of the breach of warranty against incumbrances.
This transaction covered thirty odd years, and a brief recitation of the facts will lead us up to the question that is before this court.
In January, 1849,William W. Hollister executed a mortgage to Joseph Taggart, covering the 106 acre tract in controversy. In September, 1849, Hollister conveyed this 106 acres of land to George Lescaleet, by deed of general warranty. In 1855, Taggart brought a suit to foreclose against Hollister and 'Geo. Lescaleet. George Lescaleet, pending this proceeding, in 1858, died testate, leaving a widow (Cordelia), and children, of whom Richard was one, and who was also executor of his father’s estate. All these parties, at the death of George Lescaleet, were made, defendants in that suit. In 1861, the property was sold to Thomas O’Bannon. The same year O’Bannon conveyed the 106 acres to Stanbery, and he conveyed to Richard Lescaleet for $1800, and he in turn executed notes and mortgage to O’Bannon for $1800. Negotiations were *463 then begun to secure from Hollister the price of this breach of warranty. This, as the record discloses, was consummated a year later, and paid off part of Richard’s debt for this 106 acrres of land. It is not asked to disturb the decree rendered in respect to Buckingham’s claim, but the decree otherwise and as to the other parties is said to be erroneous. The main contention is as to the thousand dollars which Richard Lescaleet received from Hollister by reason of breach of covenants in Hollister’s deed against incumbrances; and was this assets of the estate of George Lescaleet? Or, conceding that he received the same, did it come to him as devisee or heir? A solution of this question leads us to inquire whether its investment in real estate created a trust. If it was assets of the estate, and by its investment became a resulting trust, then the statute of limitations could have no application, and a sale of the lands was proper. The trust established, relief could be had.
But, the contention is that it is not. The first inquiry as we think is as to whether or not this is a covenant running with the land. We have cited to us numerous authorities upon the proposition, and there is one, 2 Disney, 573, to which I will refer: “The covenant of freedom from incumbrances, in Ohio, is a real covenant running with the land, not broken until eviction.’’ That is the question decided in that case, and is, we think, a well considered case.
In 10 Ohio, 333, after discussing this question generally, and reviewing the subject, the court says:
“The same train of reasoning which led the court to this decision will lead lo a similar result with respect to the covenant against incumbrances. This covenant, like the covenant of seizin, is made for the benefit of the grantee in respect to the land. It is not understood as a contract in which the immediate parties are alone interested, but as intended for the security of all subsequent grantees. If the first grantee continues in possession of the land while his title remains undisturbed, and conveys to a *464 subsequent grantee in whose time an outstanding incumbrance is enforced against the land, justice requires that this subsequent grantee should have the benefit of the covenant against incumbrances, to indemnify himself. We hold, therefore, in accordance with the decision in the case of Backus v. McCoy, 3 Ohio, 211, that a covenant against incumbrances is a covenant running with the land until the incumbrances are removed. And, therefore, that the plaintiff is entitled in this case to recover for the breach of such covenant.”
There are numerous decisions on this question, and it is settled law in Ohio, that it is a covenant running with the land; and, if it is a covenant running with the land, as it is, it would go to the devisee or heir, and the executor would have nothing to do with it. When the breach occurred, it would enure to the benefit of the grantee, who would then have the right.
Now, was this a resulting trust? We think that there was a clear distinction made here, and that the statute relating to trusts was properly limited; that is, that it is not every relation when we are speaking about trusts; that it is that class of trusts that are peculiarly cognizable by courts of equity, and it is only these, that are granted immunity from the operation of the statute of limitations. The controlling question in determining this is as to whether or not purchase was made contemporaneous with payment. I need not more than cite 24 Ohio St., 624; 5 Ohio, 256, and 16 Ohio St., 169. I read from the 24 Ohio St., 624:
‘‘To establish an express trust, in the case of a conveyance by deed absolute on its face, it is requisite that the evidence should be clear, certain and conclusive in proof, not only of the existence of the trust, and that, too, at the time of the conveyance, but also as to its terms and conditions.”
We think that is a matter that is controlling in this case, and it is a condition without which no such trust can be engrafted. It may furnish an occasion, or give rise to an *465 action for money had and received, but this condition is. one that is absolutely necessary. The record does not bear out the fact that this purchase was made at the time that this money was received from Hollister by Richard Lescaleet. The contrary, if anything, is true; that in 1861, this property was purchased by Richard Lescaleet,and that he executed his own notes and mortgage for the full amount, $1800; and, having done so, he sought by a correspondence invoking other parties to his aid to obtain from Hollister a thousand dollars, or as much as he could get to cover the breach of this wararnty against incumbrances; and, while it does not decide this case, we think it is a matter for remark here, that Hollister, in the payment of this as he did in 1862, paid it to Dick Lescaleet; we don’t see that he paid it for the benefit of all of these heirs even. He says: '‘I like Dick,” The inference is strong that he wanted Dick to have it. In a suit at law, if it were not barred by the statute of limitations, it would be a debatable question whether or not these other heirs would have the right, under the circumstances in which this was obtained, to recover their share from Dick Lescaleet.
If it is not a trust, it is barred by the statute of limitations. We think it is not a trust. This record does not disclose facts which warrant us in holding that -this was a trust in any view of the case. One of the requisites to the creation of a trust in this way is that the investment should be contemporaneous with the purchase. If A takes the money of B and purchases a farm, pays for it with’ B’s money, and takes the title in his own name, of course a trust would arise. But that is not this case. Richard Lescaleet purchased this farm and gave his notes. That thousand dollars was simply used to take up a part of that $1800, purchase money note and mortgage which was; the debt of Richard Lescaleet; and, at any rate, this decree would not be right, because it could not cover this entire *466 amount. He had paid on the premises $800, and he was entitled as heir to his share. The devisees, and not the executor, are the only parties who can sue for the breach of covenants running with the land.
Carl Norpell, and S. M. Hunter, for Plaintiff in Error,
Kibler & Kibler, and Waldo Taylor, for Defendants in Error.
We think it is unnecessary to say anything further in respect to this, because this covers the whole contention. This was not assets of the estate. This incumbrance was a covenant running with the land. There was no trust. The purchase and payment were not contemporaneous; and if these parties were not barred by the statute of limitations, they could sue at law for their proportion; but they are barred, and this decree is reversed. That reverses the case on the weight of the evidence also, as well as being contrary to law. The case will be remanded for further proceedings.